UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jill Rudolph, as Trustee for the Heirs and Next-of-Kin of Abby Rudolph, deceased, | Court File No.: 18-cv-1020 (WMW/LIB) |
| Plaintiff, | |
| vs. | **STATEMENT OF THE CASE FOR DEFENDANTS MEND CORRECTIONAL CARE, PLLC AND MICHELLE PENDER** |
| MEnD Correctional Care, PLLC, et al., | |
| Defendant. | |

### I.   Facts of the Case

On October 30, 2016, decedent Abby Rudolph ("Rudolph") was arrested in Moorhead, Minnesota, for shoplifting. She was subsequently booked in the Clay County Jail. Defendants MEnD Correctional Care and Nurse Michelle Pender provided medical care to inmates at the Clay County Jail. Unbeknownst to the arresting officer, jail staff, and Nurse Pender, decedent Rudolph was an active and heavy drug user – both methamphetamine and heroin.

On October 31, 2016, Nurse Michelle Pender first observed Rudolph. Rudolph represented that she had been a previous drug user but it had been four months since her last use. Rudolph did not initially display the physiological characteristics of a long-time user, but began experiencing withdrawal symptoms after her initial visit with Nurse Pender. Rudolph reported her symptoms to other inmates, who subsequently reported it to the correctional officers ("COs"). On November 1, Rudolph was moved to a different cell where COs observed her every 15 minutes. Rudolph was observed by COs to have a

diminished appetite and to be vomiting. COs routinely gave her water and other beverages and also routinely observed her to be "ok."

On November 1, 2016, Rudolph took a urine test (for pregnancy) which returned negative for pregnancy, but returned positive for methamphetamine and opioids. On November 2, 2016, Nurse Pender again evaluated Rudolph. Nurse Pender noted eating disturbances related to her vomiting, but observed she was oriented and not showing other signs of withdrawal. The COs' notes for the time frame preceding the exam also note Rudolph as alert and oriented.

On November 3, 2016, Nurse Pender looked at the "15 minute check" sheet completed by the COs when she arrived at work in the morning. That sheet indicated one bout of vomiting over the previous night, and also noted that earlier that morning Rudolph had been given fluids at approximately 5 a.m. The rest of the 15 minute checks for that timeframe read "ok." Nothing on this form indicated that Rudolph was in acute distress, and Nurse Pender planned to see Rudolph later that day to check on her status.

However, before she could see Rudolph as planned, a CO informed Nurse Pender that Rudolph did not look well. While Rudolph's vital signs were within normal range, Nurse Pender observed Rudolph to have dilated pupils and issues with orientation. Along with a CO, Nurse Pender accompanied Rudolph to the shower. While Rudolph was showering, Nurse Pender went to contact a physician to discuss her symptoms and potential treatment. While on the phone, Nurse Pender was informed that Rudolph had collapsed in the shower. Nurse Pender told the jail to call for an ambulance and immediately returned to attend to Rudolph. Rudolph was breathing and had a pulse. The

ambulance crew arrived shortly after being called and took Rudolph to the ambulance where they continued to treat her. Rudolph subsequently went into a state of shock and resuscitation efforts were unsuccessful. Rudolph died in the ambulance. An autopsy revealed Rudolph to have died from acute bronchopneumonia.

Plaintiff has alleged the following claims against either MEnD, Nurse Pender, or both:

(1) Denial of due process right to adequate medical care
(2) Denial of due process right to life
(3) Failure to train
(4) Medical malpractice

Plaintiff has also alleged numerous other claims against co-defendants, who are Clay County jail administrators and employees.

## II. Particularized Facts

To prevail on a deprivation of medical care claim, an inmate must prove the defendants acted with deliberate indifference either to her existing serious medical needs or to conditions posing a substantial risk of serious future harm. Weaver v. Clark, 45 F.3d 1253, 1255 (8th Cir. 1995). Nurse Pender used reasonable and appropriate clinical judgment, relying on her training, experience, and expertise, in addition to reasonably relying upon the statements of Rudolph and jail staff, to appropriately evaluate and treat Rudolph. Each time Nurse Pender saw Rudolph, Rudolph was alert and oriented, and her clinical presentation was stable. There was nothing about Rudolph's condition that necessitated advanced interventions. When Rudolph's condition did destabilize, Nurse Pender responded appropriately. There was nothing Nurse Pender failed to do, or should

3

have done, that would have prevented Rudolph's death.

### III. Damages

Defendants MEnD and Nurse Pender are not claiming any damages.

Date: August 17, 2018

**LARSON · KING, LLP**

By s/Carolin Nearing
Anthony J. Novak (0351106)
Carolin Nearing (0291791)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN 55101
Tel: (651) 312-6500
Fax: (651) 312-6618

**Attorneys for Defendants MEnD Correctional Care, PLLC and Michelle Pender**