# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Craig Casler, as Trustee for the
Heirs and Next-of-Kin of Abby
Rudolph, deceased,

        Plaintiff,

vs.

Clay County, Minnesota, *et al.*,

        Defendants.

Case No. 0:18-cv-01020 (WMW/LIB)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESSES

---

## INTRODUCTION

Defendants respectfully submit this Memorandum in Support of their Motion to Exclude Plaintiff's experts Mark Willenbring, Kathryn Wild, and Mary Sens under L.R. 7.1(c)(6) and Federal Rule of Evidence 702. Plaintiff failed to properly disclose these experts, their specific opinions, or the reports *they* prepared, as ordered by the Court and required under the Federal Rules of Civil Procedure. Furthermore, the purported expert testimony as framed by Plaintiff's counsel is neither reliable nor trustworthy, and fails to assist the factfinder in determining any fact at issue. Moreover, Ms. Wild is unqualified to render opinions in this case. Accordingly, the opinions of these experts must be excluded.

# BACKGROUND

This action was initiated on April 16, 2018, for constitutional deprivations and state law violations which allegedly occurred while Abby Rudolph was detained in the Clay County Jail in October and November 2016.[1] *See generally, Complaint, April 16, 2018, Electronic Court Filing Document Number 1.* Then-Plaintiff Jill Rudolph named Clay County, Clay County Jail administrators, various Clay County correctional officers, as well as MEnD Correctional Care, PLLC ("MEnD"), and the independent MEnD employees as Defendants in this case. *Id.* Jill Rudolph claimed each Defendant had violated Abby Rudolph's constitutional rights to adequate medical care and substantive due process. *Id. at 21-28 (Counts 1-4).* Furthermore, she claimed Clay County and MEnD had failed to train their respective employees causing the constitutional deprivations Rudolph allegedly suffered. *Id. at 28-31 (Counts 5-6).* Additionally, she brought a Minnesota State law claim for medical malpractice against MEnD. *Id. at 31-33 (Count 7).*

On August 30, 2018, the Court entered a Pretrial Scheduling Order, which was later amended on March 14, 2019, after Craig Casler ("Plaintiff") was substituted as trustee. *Pretrial Scheduling Order, August 30, 2018, Doc. #16; Amended Pretrial Scheduling Order, March 14, 2019, Doc. #39.* Both Court Orders mandated:

---

[1] A detailed summary of the relevant facts of this case is contained in Defendants' Memorandum of Law in Support of Summary Judgment.

That within the foregoing period allotted for discovery, but no later than the dates set forth below, the parties shall retain and disclose to opposing counsel all persons they intend to call as expert witnesses at trial. Each party's disclosure shall identify each expert and state the subject matter on which the expert is expected to testify. The disclosure **shall be** accompanied by a written report **prepared** *and signed* **by** *the expert witness*. As required by Rule 26(a)(2)(B), Federal Rules of Civil Procedure, the report shall contain:

> a.    The qualifications of the witness, including a list of all publications authored by the witness within the preceding 10 years;
>
> b.    The compensation to be paid for the study and testimony;
>
> c.    A listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years;
>
> d.    A complete statement of all opinions to be expressed and the basis and reasons therefor;
>
> e.    The data or other information considered by the witness in forming the opinions; and
>
> f.    Any exhibits to be used as a summary of or support for the opinions.

*Id. Doc #16 at 4; Doc. #39 at 4-5 (emphasis added)*. The Amended Scheduling Order required Plaintiff make his expert disclosures on or before May 10, 2019, and the Defendants make their expert disclosures on or before July 9, 2019. *Amended Pretrial Scheduling Order, at 5, Doc. #39*.

3

While most of the claims at issue in this case involved evaluating Defendants conduct under the Eighth and Fourteenth Amendments' deliberate indifference standard, Plaintiff's medical malpractice claim against MEnD was subject to special requirements under Minnesota law. When a medical-malpractice claim requires expert testimony to establish a *prima facie* case, Minn. Stat. § 145.682, requires the plaintiff to serve two affidavits of expert identification.[2]

On May 8, 2019, Plaintiff served upon counsel for the MEnD Defendants, as well as counsel for the County Defendants, three affidavits of identification under Minn. Stat. § 145.682 identifying Mary Ann Sens, M.D., Ph.D., Kathryn J. Wild, RN, MPA, CCHP-RN, and Mark Leon Willenbring, M.D. *Declaration of Jason M. Hiveley, Exhibit 1, November 8, 2019.* Each of the affidavits was prepared and signed by counsel for Plaintiff Colin F. Peterson ("Attorney Peterson"). *Hiveley Decl. Exs. 2-4.*

On May 23, Plaintiff moved the Court for approval of a settlement between Plaintiff and MEnD. *Notice of Motion for Approval of Distribution of Wrongful Death Proceeds, May 23, 2019, Doc. #42.* The Court presumably[3] granted this motion on August 6, 2019. *Filed Under Seal – Order, August 6, 2019, Doc. #52.*

---

[2] *See also, Forciea v. Lockman*, No. A09-1031, 2010 WL 346437, at *2 (Minn. App. Feb. 2, 2010).

[3] The County Defendants are unaware of the content of this Order as it remains sealed.

On August 9, Attorney Peterson inquired as to the status of Defendants' expert disclosures, and counsel for Defendants notified Attorney Peterson "Defendants did not disclose any experts because we did not receive any disclosures to rebut. As you know, Plaintiffs did not disclose any experts under Rule 26(a)(2)." *Id. Ex. 5 at 3-4.* In response, and for the first time, Attorney Peterson suggested that the affidavits of identification served on May 8, 2019, were meant to serve as expert disclosures under Federal Rule of Civil Procedure 26(a)(2). *Id. at 2.* As counsel for Defendants noted in response, the affidavits of expert identification provided no indication Plaintiff intended them to serve as expert disclosures under Federal Rule of Civil Procedure 26(a)(2), leading Defendants to believe the affidavits were what they claimed to be; affidavits of identification under Minn. Stat. § 145.682, which Plaintiff was required to produce in order to maintain his medical malpractice claim against MEnD. *Id. at 1-2.* This belief was further supported by the numerous substantive and procedural deficiencies which were revealed when the affidavits were viewed from the perspective of Rule 26(a)(2)'s requirements for expert disclosures. *Id.*

Despite these deficiencies, counsel for Defendant notified Attorney Peterson Defendants were willing to give Plaintiff the opportunity to cure the purported "expert disclosures." *Id.* Attorney Peterson responded, however, that Plaintiff

disagreed he was required to follow the requirements for expert disclosures explicitly stated in the Federal Rules and expressly ordered by the Court. *Id. at 1*.

Nevertheless, counsel for Defendants sought to discuss the issue with Plaintiff's counsel further prior to potentially filing motions under Rule 37 and 16(b)(4).. On September 19, 2019, counsel for Defendants requested the parties meet and confer over these issues, however, none of Plaintiff's three attorneys responded to Defendants' request prior to the Court's September 25, deadline for filing non-dispositive motions. *Id. ¶8, Ex. 6; Amended Pretrial Scheduling Order, at 3, Doc. #39*; L.R. 7.1(b)(1).

## LEGAL STANDARD

District courts have broad discretion to determine the admissibility of expert testimony. *UnitedHealth Group Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 865 (8th Cir. 2017).

Additionally, "Rule 16 gives the district court the authority to set management deadlines and to impose sanctions for their violation[,]" *id.*, and "the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).

**ARGUMENT**

**I.** **THE COURT SHOULD EXCLUDE ALL THE IDENTIFIED EXPERTS BECAUSE PLAINTIFF'S FAILURE TO ABIDE BY THE FEDERAL RULES WAS UNJUSTIFIED AND IT CAUSED DEFENDANTS PREJUDICE.**

Rule 26(a)(2) of the Federal Rules of Civil Procedure addresses the requirements for expert disclosures. A party's expert disclosures "**must** be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Critically, along with Rule 26(a)(2)(B)'s other requirements, the report must be "prepared and signed by the witness." *Id.* "[R]equiring testifying experts to submit written reports is entirely consistent with the spirit of Rule 26(a)(2)(B). It is not only likely that such reports will serve to streamline or even eliminate the necessity for deposition testimony, but they will undoubtedly serve to minimize the element of surprise." *Minnesota Min. & Mfg. Co. v. Signtech, USA, Ltd.*, 177 F.R.D. 459, 461 (D. Minn. 1998).

In addition to other expert disclosure requirements, Plaintiff failed to meet Rule 26(a)(2)'s requirement expert disclosures "must be accompanied by a written report." Rather than producing reports from his potential experts, Plaintiff produced affidavits of identification per Minn. Stat. §145.682. Notably, none of the affidavits were "prepared and signed by the witness" as they must be under Rule 26(a)(2)(B). Instead, each affidavit was prepared and signed by counsel for

Plaintiff. This is insufficient under the rules because "preparation implies an expert's involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement." *Kenall Mfg. Co. v. Genlyte Thomas Grp. LLC*, 413 F. Supp. 2d 937, 943 (N.D. Ill. 2006)(quotations and internal marks omitted).

Plaintiff's failure to abide by the Federal Rules of Civil Procedure warrants exclusion of Plaintiff's proposed experts. "A party that fails to disclose information required by Rule 26(a) shall not be permitted to use the nondisclosed information as evidence at a trial, at a hearing, or on a motion unless such failure is harmless or there was substantial justification for the failure." *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (quotation and internal marks omitted). "Rule 16 gives the district court the authority to set management deadlines and to impose sanctions for their violation[,]" *id.*, and "the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener*, 527 F.3d 692. When fashioning a remedy, the district court should consider, among other factors, the reason for noncompliance, the surprise and prejudice to the opposing party, and the importance of the information or testimony. *Id.*

Defendants have been prejudiced by Plaintiff's failure to abide by the Federal Rules of Civil Procedure. Rule 26(a)(2)'s requirements are designed "to

eliminate 'unfair surprise'" and permit the opposing party to prepare a rebuttal, whether through additional expert testimony or through a deposition in advance of trial. *Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1059–60 (D. Minn. 2012) (quoting *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.1995)); *see also, Bennett v. Int'l Paper Co.*, No. CIV. 05-38 (PJS/RLE), 2008 WL 5130873, at *3 (D. Minn. Aug. 29, 2008) ("[T]he purpose of the expert disclosure deadline is both to prevent surprises, and to allow parties to adequately prepare for depositions which concern the consideration and exploration of technical and scientific issues")). Having no expert reports, and only the representations of Plaintiff's counsel, Defendants are bound to be surprised by the true opinions of the identified experts. Yet, even if Plaintiff produced expert reports at this late date, the prejudice would remain because Defendants were deprived of the opportunity to retain rebuttal experts. Importantly, Plaintiff did not clarify he was attempting to use the affidavits of identification to satisfy Rule 26(a)(2) until August 9, one month after the deadline for Defendants expert disclosures had already passed. Furthermore, this prejudice was imposed without justification.

Plaintiff's failure to abide by the Federal Rules of Civil Procedure was not justified. The only the reason for noncompliance identified by Plaintiff was Plaintiff's counsel "disagree[d] as to what the rules require." Nevertheless, the Federal Rules of Civil Procedure's requirements are explicit, and the Court even

restated them in the Scheduling Order. The Court should exclude each of the identified experts because Plaintiff caused Defendants to suffer prejudice without justification. Yet even if Defendants were not prejudiced by Plaintiff's failure to abide by the Federal Rules, the potential expert testimony would still be subject to exclusion because it is neither reliable nor relevant.

## II. THE COURT SHOULD EXCLUDE THE IDENTIFIED EXPERTS' ANTICIPATED TESTIMONY.

The admissibility of expert testimony is governed by Rules 702 and 703 of the Federal Rules of Evidence. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014). Under Rule 702, the judge acts as a "gatekeeper" by screening evidence for relevance and reliability. *Polski v. Quigley Corp.*, 538 F.3d 836, 838 (8th Cir. 2008). The screening requirement of Rule 702 has been boiled down to a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson*, 754 F.3d at 561 (quoting *Polski*, 538 F.3d at 839). The proponent of the testimony has the burden to show by a preponderance of the evidence the

testimony is admissible under Rule 702. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

## A. NONE OF THE IDENTIFIED EXPERTS' ANTICIPATED TESTIMONY IS USEFUL TO THE FACTFINDER.

"Expert opinion testimony is admissible only if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (quoting Fed. R. Evid. 702). The Rule's "helpfulness" requirement is the "touchstone for the admissibility of expert testimony." *Lee v. Anderson*, 616 F.3d 803, 808 (8th Cir. 2010).

### 1. Dr. Willenbring's Testimony Concerning Proper Opioid Withdrawal Treatment Is Not Useful to The Factfinder.

This case involves constitutional claims under §1983. "Constitutional claims brought under 42 U.S.C. § 1983 are discrete claims." *Liggins v. Morris*, 749 F. Supp. 967, 971 (D. Minn. 1990). For a "Government-official defendant" to be liable, a plaintiff must prove each defendant "through the official's own individual actions, has violated the Constitution." *White v. Jackson*, 865 F.3d 1064, 1076 (8th Cir. 2017).

Dr. Willenbring's testimony is not helpful in determining whether any correctional defendants deprived Rudolph of her constitutional rights. According to Attorney Peterson, Dr. Willenbring will testify regarding the proper "Treatment

of Opioid Withdrawal Syndrome." *Hiveley Decl. Ex. 4 at 9 ¶¶57-60.* Such testimony is not relevant under the facts of this case.

Abby Rudolph received medical treatment for her opioid withdrawals from medical staff employed by MEnD. The Correctional Defendants were required to follow MEnD's medical recommendations, and they were not qualified to dispute them. No Correctional Defendants participated in MEnD's treatment decisions either "directly," *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997), or "personally," *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016), *as amended* (Mar. 4, 2016), and because they "lacked medical expertise," they "cannot be liable for the medical staff's diagnostic decisions." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). The law does not require correctional officers who lack "medical expertise" and have "less medical training" than qualified health professionals "to second-guess or disregard" medical professionals' decisions. *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). Instead, correctional "officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011).

Because no Correctional Defendants participated in MEnD's treatment decisions, Dr. Willenbring's testimony concerning proper treatment of opioid

withdrawals is not relevant to the issues remaining in this case and should therefore be excluded.

### 2. Dr. Willenbring's Testimony Regarding Abby Rudolph's Medical Condition in 2016 is Not Useful to the Factfinder.

The §1983 constitutional claims at issue in this case are evaluated under the Eighth and Fourteenth Amendments' deliberate indifference standard. To prove deliberate indifference Plaintiff "must make two showings—one objective and one subjective—to successfully" support his claim. *Kulkay v. Roy*, 847 F.3d 637, 642–43 (8th Cir. 2017). First, he "must show the alleged violation is objectively and sufficiently serious. . . . Second, [he] must show the defendant official acted with a sufficiently culpable state of mind." *Id*.

Dr. Willenbring's testimony is not helpful in determining whether Rudolph suffered any objectively serious medical needs. According to Attorney Peterson, Dr. Willenbring will testify that at the time of her incarceration at Clay County Jail in 2016, Abby Rudolph's "diagnosis *would have been* opioid dependence and methamphetamine dependence, along with an anxiety disorder." *Hiveley Decl. Ex. 4 at 9 ¶¶61* (emphasis added). Furthermore, Attorney Peterson claims Dr. Willenbring will offer several other opinions concerning "Abby Rudolph's

Medical Condition in 2016." *Id. at 9-10* ¶¶*61-63*. All of this testimony must be excluded.[4]

An after the fact diagnosis is irrelevant to determining whether Rudolph was suffering an objectively serious medical need. The question "is not, in hindsight, whether [Rudolph] had a serious medical condition, but rather, whether the condition" was obvious at the time. *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008)).

What is more, Dr. Willenbring's potential testimony is not helpful to the factfinder in determining whether Rudolph suffered any medical needs that were "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). This standard requires an analysis from the perspective of a layperson as opposed to an expert with specialized knowledge. "Expert testimony is appropriate when it relates to 'issues that are beyond the ken of people of ordinary experience.'" *United States v. Clapp*, 46 F.3d 795, 802 (8th Cir. 1995) (quoting *United States v.*

---

[4] Attorney Peterson also states that Dr. Sens will offer testimony regarding Rudolph's condition during her stay at the Clay County Jail. *Hiveley Decl. Ex. 2 at 4-6* ¶¶*19-31*. To the extent Plaintiff intends to offer this testimony in relation to any objectively serious medical needs it should be analyzed in the same way as Dr. Willenbring's testimony. Nevertheless, Plaintiff has stated this testimony would be offered in relation to the cause of Rudolph's death. *Id*. As such, if Dr. Sens's testimony was not subject to exclusion for other reasons, it must be limited as such.

*French*, 12 F.3d 114, 116 (8th Cir.1993)). According to the Eighth Circuit Court of Appeals, district courts "must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015). Where, as here, the subject matter of an expert's testimony "is within the knowledge or experience of lay people, expert testimony is superfluous." *Pelster v. Ray*, 987 F.2d 514, 526 (8th Cir.1993) (citing *Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir.1984)).

The Court should exclude Dr. Willenbring's potential testimony regarding Abby Rudolph's Medical Condition in 2016 because it is not helpful to the factfinder in determining whether Rudolph suffered any medical needs.

### 3. The Identified Experts' Negligence Testimony Is Not Useful to the Factfinder.

In addition to the potential testimony of Dr. Willenbring, Attorney Peterson testifies that that Registered Nurse Kathryn J. Wild will offer testimony in this case. Like Dr. Willenbring, none of Nurse Wild's testimony is helpful to the factfinder.

According to Attorney Peterson, Nurse Wild was asked "to review whether the negligence of the correctional officers played a substantial part in bringing about this tragic outcome." *Hiveley Decl. Ex. 3 at 2 ¶5.* Nurse Wild will testify "with respect to the issues of negligence and causation," and will abide by the legal

definitions of those terms as they apply "to the negligence cases in Minnesota." *Id. at 2 ¶1, 3 ¶¶11-12.* Likewise, Attorney Peterson claims Dr. Willenbring will also testify regarding causation as it "applies to the negligence cases in Minnesota." *Id. Ex. 4 at 2 ¶ 7, 10 ¶¶64-67.* With respect to the issues of negligence and causation applicable "to the negligence cases in Minnesota," Attorney Peterson goes on to claim Ms. Wild will testify regarding the "standards of reasonable care" applicable to correctional officers, and how the alleged negligence of the correctional officers breached those standards of reasonable care. *Id. Ex. 3 at 10-14 ¶¶61-81.*

None of the anticipated negligence testimony is relevant to the remaining claims, and therefore it is not helpful to the factfinder. To prove deliberate indifference, Plaintiff "must show the defendant official acted with a sufficiently culpable state of mind." *Kulkay*, 847 F.3d at 643. The Eighth Circuit Court of Appeals "has repeatedly held mere negligence or inadvertence does not rise to the level of deliberate indifference." *Id*. A showing of deliberate indifference is even "greater than gross negligence." *Pietrafeso v. Lawrence County, S.D.*, 452 F.3d 978, 983 (8th Cir. 2006). The "subjective inquiry must show a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). "In contrast to negligence, deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay*, 847 F.3d at 643.

The inapplicability of state law negligence concepts is highlighted by the problematic premise on which Nurse Wild's potential testimony is based. According to Attorney Peterson, "Ms. Wild will testify that from the evening of October 31 through the afternoon of November 3, the correctional officers were aware - or **should have been aware** - that Ms. Rudolph was experiencing intractable vomiting and diarrhea." *Hiveley Decl. Ex. 3 at 13 ¶77.* (emphasis added). While "constructive knowledge, or the 'should-have-known' standard," is relevant to the issue of negligence—to which all of Wild's testimony relates—it is "not sufficient to support a finding of deliberate indifference." *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998). Indeed the U.S. Supreme Court unanimously rejected the "should have known" standard for deliberate indifference in *Farmer v. Brennan*, 511 U.S. 825, 832–51 (1994).

The potential testimony regarding the state law negligence concepts applicable "to the negligence cases in Minnesota," is unhelpful to the factfinder and should be excluded.

## B. NURSE WILD IS NOT QUALIFIED TO ASSIST THE FACTFINDER IN DECIDING THE ISSUES IN THIS CASE.

To assist the factfinder in understanding the evidence and determining facts in issue, an expert must be qualified by specialized knowledge, skill, experience, training, or education. Fed. R. Evid. 702. "The trial court has to decide whether this

particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Am. Auto. Ins. Co.*, 783 F.3d at 723 (quotation omitted). The subject matter area of an expert witnesses' competence must match the subject matter of the witness's testimony, *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006), and a district court must ensure the expert does not opine on subjects beyond the witnesses expertise. *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). Failure "to properly confine an expert's testimony solely to matters within his expertise may constitute reversible error." *Hale Cty. A & M Transp., LLC v. City of Kansas City, Mo.*, 998 F. Supp. 2d 838, 843 (W.D. Mo. 2014) (citing *Wheeling*, 254 F.3d at 715).

Nurse Wild is not qualified to offer opinions regarding the standards to which law enforcement officers such as the Correctional Defendants are held. While Attorney Peterson indicates Nurse "Wild has had extensive experience training correctional officers" this training is limited to correctional nursing and healthcare. *Hiveley Decl. Ex. 3 at 2-3 ¶8*. Nurse Wild may be qualified to opine on the conduct of the MEnD Defendants, but the Correctional Defendants are not medical professionals. There is nothing in Nurse Wild's background demonstrating she is qualified to opine on the standards of care applicable to correctional officers. *Id. at 2-3 ¶¶2, 7-10, Exhibit A, 16-19*. Indeed, her background

establishes she has no experience, training, or education in the field of custodial corrections. *Id.* Other courts have reached the same conclusion where Nurse Wild attempted to offer opinions on the conduct of law enforcement officers. In *Grafton v. Bailey* the plaintiff attempted to offer Nurse Wild's opinion "that 'the emergency response [of a Deputy] was well below the standard of care" and "the correctional officers at the Claiborne Parish Women's Jail were subjectively aware that [plaintiff] was in need of medical treatment for a serious condition and consciously disregarded her serious health care needs." No. CV 13-2940, 2018 WL 2325410, at *5 (W.D. La. May 22, 2018). In excluding Nurse Wild's proffered opinions, the court found:

> Nurse Wild is not qualified to testify to the conduct and actions of law enforcement officers. Thus, her opinions are inadmissible. The fact that Nurse Wild has 31 years of experience in the correctional health setting does not qualify her to testify as to whether the law enforcement officers were "deliberately indifferent." Nurse Wild begins her "Discussion and Opinion" section by concluding that based on "my 31 years in the correctional health setting, it is my opinion that the care provided by ... health providers ... was so dysfunctional, uncaring and haphazard, that it amounted to deliberate indifference." Nurse Wild then reviews national accreditation standards and Louisiana statutes as they relate to health care providers. After comparing these standards with the actions of Dr. Hearn and Nurse Edwards, Nurse Wild then concludes that "the emergency response [of Deputy Tate] was well below the standard of care" and "the correctional officers at the Claiborne Parish Women's Jail were subjectively aware that [] Grafton was in need of

medical treatment for a serious condition and consciously disregarded her serious health care needs."

Although Nurse Wild has a specialized knowledge in the field of correctional health care, she fails to show how she has any specialized knowledge of the standards or guidelines of correctional officers — Nurse Wild has no experience or training as a law enforcement officer or as an officer at a correctional facility. Thus, she is unqualified on this issue and her testimony on this matter is excluded. The Court acknowledges that Nurse Wild may be qualified to render her opinions on the actions of Nurse Edwards, but her actions are not at issue in this matter. . . . Therefore, the Court finds Nurse Wild's opinions inadmissible under Fed. R. Evid. 702(a).

*Grafton*, 2018 WL 2325410, at *5. This Court should reach a similar conclusion and exclude Nurse Wild's testimony in its entirety.

## C. THE POTENTIAL EXPERT TESTIMONY IS NEITHER RELIABLE NOR TRUSTWORTHY.

"The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). To satisfy the reliability requirement, Plaintiff must show by a preponderance of the evidence, the methodology underlying the proposed conclusions is scientifically valid. *Solheim Farms, Inc. v. CNH America, LLC*, 503 F.Supp.2d 1146, 1149 (D. Minn. 2007) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, at 589-90 (1993)). A court may examine a various factor to determine reliability, *see Daubert*, 509 U.S. at 593-94, including whether the

expert independently arrived at their conclusions, or "developed their opinions expressly for purposes of testifying." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012).

Because Attorney Peterson—rather than the potential experts—formulated the opinions espoused in the affidavits of identification, the potential expert testimony is neither reliable nor trustworthy. As the district court in *Weitz Co., LLC v. Lloyd's of London*, reasoned when confronted with a similar situation:

> If Dr. O'Brien had been involved, even to some limited extent, in the underlying research, analysis or drafting of the report, the court would view his apparent lack of knowledge as to certain aspects of the report as a matter of weight. But where it appears he had no involvement in the underlying research, analysis or drafting of the report, the court finds very little, if any, evidentiary value to his testimony.
> . . .
> Putting Dr. O'Brien's apparent uncertainty as to some underlying facts aside, the fact remains that Ms. Griffin did not merely provide Dr. O'Brien with facts and data; instead, she performed all the research, analysis, and drafting of the conclusions and opinions found in the written report.
> . . .
> Here, Dr. O'Brien appears to be nothing more than a mouth-piece to voice the conclusions reached by Ms. Griffin. Because of Dr. O'Brien's complete lack of involvement in the underlying research and analysis, there is no basis in the record for the court to conclude that the principles and methodology behind the opinions

> set forth in the November 17, 2005 report are in fact
> reliable.
>     Nevertheless, the written report dated November
> 17, 2005, fails to comply with Federal Rule of Civil
> Procedure 26(a)(2)(B) and, under the record currently
> before the court, is not reliable or trustworthy as required
> under Federal Rule of Evidence 702.

No. CIV4:04-CV-90353TJS, 2007 WL 7131908, at *3–4 (S.D. Iowa Sept. 28, 2007).

The affidavits disclosing the potential expert testimony were not prepared by the experts themselves. This fact alone makes the potential testimony unreliable. This reasoning applies with even greater force than in *Weitz* because the situation confronted by the Court is even more egregious. Notably, the *Weitz* Court recognized "that this is not a case where the expert report at issue was authored by counsel or a litigation consultant." *Weitz Co., LLC*, 2007 WL 7131908, at *3 (citing *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 291–96 (E.D.Va.2001) (addressing experts' reports allegedly ghost written by litigation consultants, collecting cases, and reasoning "courts have also discounted expert testimony when experts merely express the opinions of the lawyers who hired them. . . . Furthermore, if opinions expressed in an expert report are not the opinions of the expert, the expert will not be able to satisfy the requirements of Fed. R. Ev 702 and *Daubert* that the report be based on the expert's own valid reasoning and methodology. . . . Also, under the analysis required by Rule 702, absent

independence from the party or its advocates, a testifying expert lacks the credibility necessary to be of assistance to the trier of fact.")).

Here there is no dispute the affidavits were written and prepared by Plaintiff's counsel; Attorney Peterson signed each affidavit under oath. Furthermore, it cannot be claimed the experts independently reached their conclusions. This fact is best exemplified by a comparison of the affidavits themselves, portions of which reach identical conclusions, albeit with slightly different phrasing. *Compare Hiveley Decl. Ex. 3 at 9 ¶¶55-60, with Hiveley Decl. Ex. 4 at 7-8 ¶¶51-56.* Plaintiff cannot candidly claim Dr. Willenbring and Nurse Wild independently arrived at these conclusions without the influence of Plaintiff's counsel.

There is no basis to conclude the principles and methodology behind the expert opinions (if any) are reliable and trustworthy. On the contrary, there are numerous reasons to find otherwise. The potential opinions are not expressed in an expert report, and there is no way to determine whether they are truly the opinions of the experts and not the lawyers who hired them. What is more, the similarities in the affidavits, each of which was prepared and signed by Plaintiff's attorney, cannot credibly be claimed to be a result of independent valid reasoning and methodology. The Court should exclude the potential expert testimony because it is neither reliable nor trustworthy.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Court exclude Willenbring, Wild, and Sens as expert witnesses.

IVERSON REUVERS CONDON

Dated: November 8, 2019          By _____

Jason M. Hiveley, #311546
Andrew A. Wolf, #398589
9321 Ensign Avenue South
Bloomington, MN 55438
jasonh@irc-law.com
andrew@irc-law.com
(952) 548-7200

*Attorneys for Defendants*