UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Craig Casler, as Trustee for the Heirs and Next-of-Kin of Abby Rudolph, deceased, | Case No.: 18-CV-1020 (WMW/LIB) |
| Plaintiffs, | **Petition for Approval of Final Distribution of Wrongful Death Settlement Proceeds from The Remaining Defendants** |
| vs. | |
| MEnD Correctional Care, PLLC, et al, | |
| Defendants. | |

Pursuant to Minn. Stat. § 573.02 and Minn. Gen. R. Prac. 144.05, Craig Casler, as trustee for the heirs and next-of-kin of decedent Abby Rudolph, petitions this Court for final distribution of settlement proceeds from the remaining defendants arising out of the wrongful death of his niece, Abby Rudolph. To that end, Petitioner respectfully declares as follows:

1.      On February 13, 2019, in the United States District Court, District of Minnesota and with the consent of all of the next-of-kin, Craig Casler was appointed as trustee to maintain a wrongful death action under Minn. Stat. § 573.02 on behalf of the next-of-kin of Abby Rudolph. (*See* Order Appointing Trustee attached hereto as **Exhibit A**.)

2.      The names, relationships, and addresses of Abby Rudolph's next of-kin are as follows (dates of birth are not included here but all are of majority):

| Name | Relationship | Address |
|------|--------------|---------|
| Steven Rudolph | Father | 1300 Metropolitan Leavenworth, KS 66048 |
| Allison Rudolph | Sister | 1007 Parke Avenue S. Glyndon, MN 56547 |
| Jack Rudolph | Brother | 1007 Parke Avenue South Glyndon, MN 56547 |

3.      This is a wrongful death action involving allegations of negligent care and treatment of Abby Rudolph. Abby Rudolph was nineteen years old when she died at the Clay County Jail on November 3, 2016.

4.      Petitioner previously settled with defendant MEnD Correctional Care, PLLC, and Michelle Pender, individually and in her capacity as Clay County Jail Nurse.

5.      Defendants Savat, Rood, Magnuson, Nelson, Blum, Livingood, Johnson, Hermes, Stetz, Then, White-Tutton, Torkelson, Larson, and Roberts, were previously dismissed [Docket No. 90]. The remaining Defendants are Defendants Benson, Bartness, Hanson, Olson, Lien, and Heck

6.      Jill Rudolph who was previously appointed as Trustee in this matter by the Court on March 1, 2017, (*see* attached Order as **Exhibit B**), died on December 20, 2018. Jill Rudolph initially consulted attorney, Mark Anderson of Anderson Law Offices, who believed it would be in the best interest of the Abby Rudolph family to associate with Brandon Thompson, then with the law firm of Robins Kaplan LLP, and

now with the law firm of Ciresi, Conlin, LLP. Mr. Thompson then retained Vince Moccio of Bennerotte & Associates, that specializes in actions pursuant to 42 U.S.C. § 1983. Due to the complexity of the case, the costs involved, and the risk of not making a recovery, the attorneys offered to handle this matter on a 40% contingent fee with contingent repayment of costs. Jill Rudolph agree to this arrangement and executed a retainer agreement to that effect. (*See* Retainer Agreement, attached hereto as **Exhibit C**.)

7.     After being retained, Petitioner's attorneys did everything that was appropriate in the handling the investigation of this matter, including the evaluation of hundreds of pages of Abby Rudolph's medical records, undertaking extensive medical research, and conferring with numerous medical experts. Petitioner's counsel consulted with nationally known experts in the field of forensic pathology, addiction psychiatry and nursing in order to determine the nature and extent of the negligence in this case. Counsel extensively explored the issues of whether the care received by Abby Rudolph was consistent with accepted standards of practice, and whether a deviation from accepted standards of practice played a substantial part in bringing about Abby Rudolph's death. The experts ultimately concluded that the medical treatment that Abby Rudolph received departed from accepted standards of medical practice, and that these departures more likely than not caused Abby Rudolph's death.

8.     After completing a thorough investigation and securing the necessary expert opinions, Petitioner's attorneys notified the potential defendants of their determination that a meritorious claim existed. Counsel carefully laid out all of the

3

allegations of negligence, outlined the opinion of the experts with whom they had consulted, and explained the damages suffered.

9.      Petitioner's counsel placed this matter in suit. Defendants vigorously defended the case.

10.     After lengthy discovery and negotiations, defendants made a settlement offer in the amount of $150,000.00, which Petitioner accepted. Under the terms of the agreement, remaining Defendants Benson, Bartness, Hanson, Olson, Lien, and Heck will be voluntarily dismissed for the payment of no money and the $150,000 settlement will be paid by Clay County and its insurer. Two separate Settlement Agreements — one with the remaining Defendants and one with Clay County and its insurer — will be executed by the parties.

11.     Petitioner and his counsel discussed the risks and benefits of either accepting the settlement or proceeding to trial against these defendants. After discussing this matter at length, Petitioner concluded that the settlement was fair and reasonable, and that it was therefore in the best interest of the next-of-kin of Abby Rudolph to accept this offer of settlement and release the remaining defendants.

12.     Funeral and burial expenses for Abby Rudolph totaled $7,898.38 and have been paid.

13.     There are no medical expenses related to the negligence claimed by Petitioner.

14.     Under the terms of the retainer agreement, Petitioner's attorneys are entitled to receive forty percent (40%) of the gross amount of recovery, or $ 60,000 in

4

attorneys' fees. Those attorneys' fees are split among the law firms with the firm of Anderson Law Office entitled to 10% of the fee, or $6,000; Bennerotte & Associates, P.A. entitled to 45 % of the fee, or $ 27,000, and Ciresi Conlin LLP entitled to 45% of the fee, or $ 27,000.

15.     In prosecuting this claim, Ciresi Conlin LLP and Bennerotte & Associates incurred out-of-pocket expenses. Under the terms of the retainer agreement, those out-of-pocket costs were advanced, with repayment contingent on achieving a recovery. Many costs were paid out of the previous settlement. Remaining outstanding costs incurred since the previous settlement equal $ 12,335.59. (See summary of costs attached hereto as Exhibit D.) Under the terms of the retainer agreement, Ciresi Conlin LLP and Bennerotte & Associates are entitled to be reimbursed for these costs.

16.     As allowed by Minn. Gen. R. Prac. 144.05, all of the next-of-kin have waived the requirement of a hearing on this matter. (*See* Consents to Partial Distribution of Wrongful Death Settlement Proceeds and Waiver of Notice of Hearing Attached hereto as Exhibit E.) There being no dispute over the distribution, Petitioner requests that the Court consider and approve the foregoing Petition without the need for a hearing.

**WHEREFORE**, the Petitioner prays for an Order of the Court as follows:

A.     Approving the distribution of proceeds of settlement for the wrongful death claim of Abby Rudolph as set forth within this Petition.

B.     Authorizing Craig Casler, as trustee for the heirs and next-of-kin of Abby Rudolph, to distribute the recovered proceeds as follows:

5

| | | |
|---|---|---|
| To Ciresi Conlin LLP for attorneys' fees and costs | $ | 37,788.75 |
| To Bennerotte & Associates for attorney's fees and costs | $ | 28,546.84 |
| To Anderson Law Office for attorney's fees | $ | 6,000.00 |
| To Allison Rudolph | $ | 30,888.14 |
| To Jack Rudolph | $ | 25,888.14 |
| To Steven Rudolph | $ | 20,888.13 |

STATE OF MINNESOTA )
                    ) ss.
COUNTY OF CLAY     )

Craig Casler, being duly sworn, says that he is the Plaintiff / Petitioner the above-entitled proceedings, that he has read the foregoing Petition and knows the contents thereof, and that the same is true of his own knowledge, except as to those matters therein stated on information and belief, and as to those matters he believes them to be true.

Craig Casler, Trustee for the
Heirs and Next-of-kin of Abby
Rudolph

Subscribed and sworn to before me
this 19th day of January 2021

Notary Public

SUSAN P JOHNSON
NOTARY PUBLIC—MINNESOTA
My Commission Expires JAN. 31, 2022

6

This document was prepared by:
Vincent J. Moccio, Esq.
Of Counsel
Bennerotte & Associates, P.A.

Exhibit A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jill Rudolph, as Trustee for the heirs and
next-of-kin of Abby Rudolph, deceased,

Court File No. 18-cv-1020 (WMW/LIB)

      Plaintiff,

v.

**ORDER**

MEnD Correctional Care, PLLC, et al.,

      Defendants.

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(A), and upon Plaintiff's Motion for Substitution of Trustee. [Docket No. 19]. Based on the representations of the parties, the Court cancelled the February 13, 2019, Motions Hearing and took Plaintiff's Motion for Substitution of Trustee, [Docket No. 19], under advisement on the parties' written submissions on February 13, 2019. (Text-Only Order [Docket No. 25]). [1]

For the reasons discussed below, Plaintiff's Motion for Substitution of Trustee, [Docket No. 19], is **GRANTED**.

In the present case, before commencing this wrongful death action, Jill Rudolph (hereinafter "Plaintiff"), the mother of decedent Abby Rudolph (hereinafter "decedent"), was appointed trustee by the Clay County District Court on March 1, 2017. (Amended Compl., Ex. A [Docket No. 1]). On April 16, 2018, as trustee, Plaintiff brought the present wrongful death action in the District of Minnesota. (Amended Compl. [Docket No. 2]).

---

[1] Plaintiff also filed an Amended Petition for Appointment of Trustee, [Docket No. 18], which is an affidavit signed by Craig Casler on January 10, 2019. Docket No. 18, however, does not seek relief from this Court. Therefore, the Clerk's office is directed to term Docket No. 18.

On January 22, 2019, Plaintiff, through counsel, filed the present Motion for Substitution of Trustee. (Def.'s Mot. [Docket No. 19]). On January 22, 2019, Plaintiff, again through counsel, also filed a meet and confer statement indicating that Defendants do not oppose the motion. (Meet and Confer Statement [Docket No. 21]).

In the present motion, Plaintiff, through counsel, seeks an Order from this Court appointing a new trustee because the current trustee, Jill Rudolph, is herself now deceased.

According to Plaintiff's counsel of record, Jill Rudolph passed away on December 20, 2018, and thus she can obviously no longer serve as trustee. (Plf.'s Mem., [Docket No. 22], at 2). Therefore, Plaintiff's counsel requests that the Court appoint a new trustee on behalf of the heirs and next-of-kin Abby Rudolph which is required to maintain a wrongful death action under Minnesota law. (Id.).

With regard to appointing a trustee for a decedent in a wrongful death action, Minnesota Statute § 573.02, subdivision 3, states that:

> Upon written petition by the surviving spouse or one of the next of kin, the court having jurisdiction of an action falling within the provisions of subdivisions 1 or 2, shall appoint a suitable and competent person as trustee to commence or continue such action and obtain recovery of damages therein. The trustee, before commencing duties shall file a consent and oath. Before receiving any money, the trustee shall file a bond as security therefor in such form and with such sureties as the court may require.

Minn. Stat. § 573.02, subd. 3.

Thus, in order to maintain an action under subdivision 1 or 2 of Minnesota Statute § 573.02, such as the present action, the statute requires a trustee be appointed to sustain the decedent's action. Minn. Stat. § 573.02, subd. 3. This is accomplished by submitting a written petition to the Court. Id. Appointment of a trustee is a condition precedent to bringing a wrongful death action under Minn. Stat. § 573.02. Ortiz v. Gavenda, 590 N.W.2d 119, 122 (Minn. 1999). Absent a

trustee, a wrongful death action under Minnesota Statute § 573.02 is a "legal nullity." Regie de l'assurance Auto. du Quebec v. Jensen, 399 N.W.2d 85, 92 (Minn. 1987). Additionally, the appointment or removal of a trustee is within the discretion of the court. Id. at 89

Here, Plaintiff's counsel proposes the appointment of Craig Casler (hereinafter "Mr. Casler"), Jill Rudolph's only sibling, as the new trustee for purposes of the present action. (Plf.'s Mem., [Docket No. 22], at 3). According to Plaintiff's counsel, Mr. Casler is a "suitable and competent" trustee because he has been employed as an engineer for 28 years, is a high school graduate, previously served in the Army National Guard, and completed three years of college at North Dakota State University. (Id. at 4). Additionally, all other potential next-of-kin consented to the appointment of Mr. Casler. (See, Peterson Affidavit [Docket No. 26]).

The Court finds that Mr. Casler has properly signed and filed a consent and oath with the Court pursuant to Minnesota Statute § 573.02, subdivision 3. (See, Plf.'s Amended Petition for Appointment of Trustee [Docket No. 18]). Notably, also, Defendants do not oppose Plaintiff's Motion and the Court finds no reason or evidence that demonstrates that Mr. Casler is anything other than "suitable and competent." (Plf.'s Meet and Confer [Docket No. 21]).

Therefore, based on the foregoing, the Court finds that Mr. Casler is a suitable and competent trustee. Having found Mr. Casler suitable and competent, the Court thereby appoints Mr. Casler as the new, substitute trustee for the next-of-kin of decedent, Abby Rudolph, to maintain the present action. See, Jensen, 399 N.W.2d at 89 (finding that it is within the discretion of the court to appoint or remove a trustee).

Lastly, Minnesota Statute § 573.02, subdivision 3 also states that "the trustee shall file a bond as security therefor in such form and with such sureties as the court may require." The State Court originally appointing Jill Rudolph waived the filing of a bond. (See, Amended Pet. [Docket

No. 18], at 4). This Court finds no reason or change of circumstance which would now necessitate the filing of a bond by the substitute trustee, Craig Casler. Accordingly, the Court will not require the payment of a bond by Mr. Casler.

Accordingly, Plaintiff's Motion for Substitution of Trustee, [Docket No. 19], is **GRANTED**.

Based on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Substitution of Trustee, [Docket No. 19], is **GRANTED**, as set forth above;

2. Craig Casler is hereby appointed trustee for the next-of-kin of decedent, Abby Rudolph, to maintain the present action;

3. The Court hereby waives the filing of a bond;

4. The Clerk of Court is directed to alter the case caption in the present case accordingly; and

5. The Clerk of Court is directed to term the Amended Petition for Appointment of Trustee. [Docket No. 18].

Dated: February 13, 2019

s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

Exhibit B

Electronically Served
3/6/2017 10:41:38 AM
Clay County, MN

State of Minnesota

District Court

County of Clay

Seventh Judicial District
Wrongful Death

In the Matter of the Appointment of
Trustee for the Next-of-Kin of
Abby Rudolph, deceased.

## Order Appointing Trustee

The foregoing Petition, having been considered.

IT IS HEREBY ORDERED, that Jill Rudolph be and hereby is appointed trustee

for the next-of-kin of decedent, Abby Rudolph, to maintain the action described in said

Petition. The Court hereby waives a hearing and filing of a bond.

The trustee is authorized to sign any authorization for the release of decedent's

medical records under Minn. Stat. §144.293 Subd. 2.

Dated: _____March 1_____, 2017

BY THE COURT

_____
Judge of District Court

FILED
Court Administrator
CLAY COUNTY
March 1, 2017

87365788.1

Exhibit C

# Agreement to Retain Legal Counsel

## I.  Purpose of this agreement.

I hereby retain Robins Kaplan LLP ("RK"), Bennerotte & Associates, P.A. ("B&A") and Anderson Law Office ("ALO"), hereinafter "my Attorneys", to make an investigation of and represent me in a medical negligence claim against the Clay County Jail, and potentially other health care providers, resulting from an incident which occurred on or about November 3, 2016.

## II.  Responsibility to pay attorneys' fees and costs.

### A.  Attorneys' fee.

For the services provided by my Attorneys, I agree to pay forty percent (40%) of the total amount recovered, whether the recovery is obtained by settlement, trial, or appeal. I will pay these fees even if this case is resolved before a lawsuit is started.

I will pay no attorneys' fees if my Attorneys do not obtain a recovery, except if I terminate my relationship with my Attorneys (see paragraph IV).

If the case is resolved on a structured basis (a lump sum payment plus periodic cash payments), I agree that the fee payable to my Attorneys shall be payable in full on the date of the first cash payment and shall be based on the then present value of the whole structured settlement.

I understand that attorneys' fees are not set by law. I have agreed to pay the attorneys' fee after discussing it with my Attorneys.

### B.  Out-of-pocket costs.

I understand that investigating and pursuing this case will require my Attorneys to incur out-of-pocket expenses. It is difficult for my Attorneys to accurately predict the amount and type of expenses it will have to pay to handle this case. Some of these expenses may include court filing fees, court reporter fees, traveling and lodging expenses, consultant fees, expert witness fees, computer service fees, charges for postage and photocopying, charges for medical records, and charges for the preparation of trial exhibits. I authorize my Attorneys to pay the expenses they decide are appropriate in investigating and pursuing this case.

In addition to the 40% attorneys' fee, I will reimburse my Attorneys for all costs and expenses they incur relative to the case. The attorney's fee shall be calculated before costs and expenses are deducted from the recovery.

I will not be required to reimburse my Attorneys for these expenses if there is no recovery, except if my relationship with my Attorneys is terminated (see paragraph IV).

87372010.1

C.      Definition of "total recovery".

The total recovery is the total amount recovered by settlement or judgment, including any amount recovered as interest, lawyers' fee and punitive damages. There is nothing to be subtracted in determining the total recovery.

D.      Division of attorneys' fees.

RK and B&A and ALO have agreed to share responsibility for the handling of my case. In the event my Attorneys obtain a recovery for me, the fees will be divided. If the case is resolved without filing a lawsuit, the division of fees will be 42.5% to RK, 42.5% to B&A and 15% to ALO. After a lawsuit has been filed, the division of fees will be 45% to RK, 45% to B&A, and 10% to ALO. I approve this division of fees. I understand that the total fee will never exceed 40%.

E.      Taxation of defense costs.

I have been informed that the law allows the "prevailing party" to attempt to recover out-of-pocket costs and disbursements. In the event a lawsuit is brought on my behalf and the lawsuit is unsuccessful, I understand that the opposing party or parties may be able to obtain a judgment against me for their costs and disbursements. I understand that such a judgment will be my sole responsibility, and neither RK, B&A nor ALO will have an obligation to pay any portion of it.

III.   My right to approve any settlement.

My Attorneys will have the responsibility for negotiating a settlement on my behalf. However, no settlement will be made without my express consent.

If my Attorneys obtain a recovery, they will provide a written statement at the end of the case explaining the recovery, the lawyers' fees, the expenses, and the net recovery. I realize and acknowledge that my Attorneys have not guaranteed, and cannot guarantee, a recovery.

IV.   My right to end representation.

I have the right to fire my Attorneys at any time, even if I have no reason. If I fire my Attorneys, I will pay for the reasonable value of their services and for the expenses they paid up to the time of discharge.

V.   My Attorneys' right to withdraw.

I understand that this type of investigation is extremely time consuming and highly problematical with regard to the chances of success. I further understand that it will likely take many months to gather information, study, and analyze this case. My Attorneys cannot recommend that they start a lawsuit until they complete their investigation of the case. I will give my full cooperation to my Attorneys as they investigate and handle the case. I understand that my Attorneys has the right to, at their discretion, withdraw from the case and return my file to me whenever they are of the opinion that the chances of success do not economically justify going forward.

If my Attorneys decide to withdraw from the case, they will try to protect my interests to the extent reasonably possible by giving reasonable notice, allowing me time to obtain other lawyers, and giving me any papers and property in their possession which belong to me. My Attorneys has no duty to find other lawyers for me in the event they withdraw from the case.

## VI.   Medical records.

I understand my Attorneys may need to obtain medical records in the investigation or prosecution of the case, and I hereby authorize them to do so. I also authorize my Attorneys to re-release copies of any medical records they receive if, in their discretion, it would be appropriate to do so in the investigation or prosecution of this case.

## VII.   Subrogation by an insurance company, plan, or other entity.

Sometimes benefits are paid to, or on behalf of, a person who has suffered a loss. An example is health insurance. The company that may have paid such benefits (for example, payment of hospital or doctors' fees) may seek to recover such payments out of any total recovery that might be obtained. This is called "subrogation." I understand that it is my obligation to pay back such benefits, if repayment is legally owed, out of the total recovery.

## VIII.   Medicare Set Aside (MSA).

Current federal law may require all parties involved in this matter to compromise, settle or execute a release of Medicare's separate claim for reimbursement/lien for past and future payments prior to distributing any verdict or settlement proceeds. I agree that my Attorneys may hire separate experts/case workers who assist with resolving Medicare's reimbursement claims or liens for past and/or future injury-related medical care. The expense of any such service shall be treated as a case expense and deducted from my net recovery and shall not be paid out of my Attorneys' contingent fee in this matter.

## IX.   Electronic and social media.

Many employers monitor their employees' e-mails, voicemail, and other electronic storage media. To avoid allowing third parties to gain access to our confidential communications and to preserve the confidentiality of our communications, including the attorney-client privilege, I agree to refrain from communicating with my Attorneys by using e-mail from my workplace computer or otherwise using anyone else's equipment or services without proper precautions.

I agree to refrain from posting anything relating to this matter on the Internet, including blogs, social-networking sites, Facebook, Twitter, Google, etc. I agree to give my Attorneys access to my social media accounts if they determine it is necessary to the investigation and pursuit of my claim.

## X.   What this agreement covers.

This Agreement states the entire agreement between me and my Attorneys. The terms of this Agreement may only be changed by a separate written agreement signed by me and my Attorneys.

My Attorneys only represent me in this case. My Attorneys have no duty to represent me in any matters other than this case.

## XI.   File retention policy.

I understand that my Attorneys have a file retention program under which they will keep my file for a certain number of years after this case has concluded. When this case is completed, my Attorneys will notify me that they are closing the file and that they will keep the file in storage for a stated number of years after the file's closure. After the stated number of years has passed, the file either will be returned to me or will be destroyed in a manner that ensures confidentiality of the information contained herein.

## XII.   Disclosure of insurance information.

Consistent with or as may be required by certain states' rules of ethics or for members of the bar, my Attorneys hereby confirm that they have professional liability insurance coverage which applies to and covers the legal services to be rendered to me pursuant to this Agreement.

### Approval of this Agreement

We have read this Agreement and agree to all of its terms.

Dated:  02/18/2017

Jill Rudolph

Dated:  4-10-17

Brandon Thompson, Esq.
Robins Kaplan LLP

Dated:  3/31/17

Vincent J. Moccio, Esq.
Bennerotte & Associates

Dated:  4/6/17

Mark D. Anderson, Esq.
Anderson Law Office

87372010.1  4

Exhibit D

# Summary of Costs

Ciresi Conlin, LLP:

| | |
|---|---:|
| Expert – Kathryn Wild | $1,705.00 |
| Expert – Mark Willenbring, MD | $4,800.00 |
| Depositions | $3,926.86 |
| Platinum Courier | $38.07 |
| Travel | $294.86 |
| DropBox audio/video | $23.98 |
| Subtotal | $10,788.77 |

Bennerotte & Associates, P.A.:

| | |
|---|---:|
| Postage | $12.53 |
| Mileage | $550.00 |
| Parking | 10.00 |
| Meals | 65.00 |
| Hotels & Airfare | 904.51 |
| Pacer Charges | $4.80 |
| Subtotal | $1,546.84 |
| Total | $12,335.59 |

Exhibit E

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Craig Casler, as Trustee for the Heirs and
Next-of-Kin of Abby Rudolph, deceased,

Plaintiffs,

vs.

MEnD Correctional Care, PLLC, et al,

Defendants.

Case No.: 18-CV-1020 (WMW/LIB)

**Consent to Distribution of
Wrongful Death Proceeds**

The undersigned, being one of the next of kin of the decedent named in the foregoing Petition, hereby waives notice of hearing on the foregoing Petition. The undersigned further states that he has reviewed the proposed distribution of wrongful death proceeds contained in the foregoing Petition, and consents to the same.

Dated this ___01___ day of ___26th___, 2021.

_____
Allison Rudolph
Sister of Abby Rudolph, Deceased

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| Craig Casler, as Trustee for the Heirs and Next-of-Kin of Abby Rudolph, deceased, | Case No.: 18-CV-1020 (WMW/LIB) |
| Plaintiffs, | |
| vs. | **Consent to Distribution of Wrongful Death Proceeds** |
| MEnD Correctional Care, PLLC, et al, | |
| Defendants. | |

The undersigned, being one of the next of kin of the decedent named in the foregoing Petition, hereby waives notice of hearing on the foregoing Petition. The undersigned further states that he has reviewed the proposed distribution of wrongful death proceeds contained in the foregoing Petition, and consents to the same.

Dated this ___19th___ day of ___January___, 2021.

_____
Jack Rudolph
Brother of Abby Rudolph, Deceased

## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

Craig Casler, as Trustee for the Heirs and
Next-of-Kin of Abby Rudolph, deceased,

Case No.: 18-CV-1020 (WMW/LIB)

Plaintiffs,

vs.

**Declaration of Allison Rudolph
Regarding Steven Rudolph's
Consent to Distribution of
Wrongful Death Proceeds**

MEnD Correctional Care, PLLC, et al,

Defendants.

---

1.      I am Abby Rudolph's sister, and one of her heirs and next-of-kin, along with my brother Jack Rudolph and my father Steven Rudolph.

2.      Steven Rudolph is currently an inmate at the United States Penitentiary — Leavenworth, located in Leavenworth, Kansas.

3.      Given my father's situation, based on my experience, it is quite difficult for him to receive correspondence by mail. Indeed, many of the letters that I have sent to him have been sent back to me without any explanation given.

4.      My primary means of communication with my father is by telephone.

5.      After a settlement was reached in this matter, I spoke with my father regarding the proposed distribution of wrongful death proceeds.

6.      Steven Rudolph told me that he consents to the distribution of wrongful death proceeds as outlined in the Petition.

I declare under penalty of perjury that everything I have stated in this document is true and correct.


Date:
01/26/2021

**Cass County, North Dakota**

Allison Rudolph